**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ASSEMBLY POINT AVIATION, INC.,**

                                        **Plaintiff,**


                **v.**                                    **1:13-CV-298**
                                                          **(FJS/RFT)**


**RICHMOR AVIATION, INC. and**
**MAHLON W. RICHARDS,**

                                **Defendants.**
_____

**APPEARANCES**                        **OF COUNSEL**

**WHITEMAN OSTERMAN & HANNA LLP**      **JOHN J. HENRY, ESQ.**
One Commerce Plaza                     **ROBERT S. ROSBOROUGH, IV, ESQ.**
Albany, New York 12260
Attorneys for Plaintiff

**TABNER, RYAN AND KENIRY, LLP**       **WILLIAM RYAN, JR., ESQ.**
18 Corporate Woods Boulevard
Suite 8
Albany, New York 12211
Attorneys for Defendants


**SCULLIN, Senior Judge**


**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Currently before the Court is Defendants' motion to dismiss the complaint in its entirety

pursuant to Rules 12(b)(1), 12(b)(6), 12(b)(7), 9(b), and 19 of the Federal Rules of Civil

Procedure and the doctrines of abstention and *forum non conveniens*. *See* Dkt. No. 12. The

Court heard oral argument in support of, and in opposition to, this motion on June 24, 2013. At

the conclusion of the argument, the Court issued its rulings from the bench and advised counsel that a written decision would follow.  The following constitutes the Court's written disposition of Defendants' motion.

## II. BACKGROUND[1]

Plaintiff is the owner of a Gulfstream IV aircraft, currently bearing the tail number N227SC (the "Aircraft").  *See* Dkt. No. 1 at ¶¶ 1, 18.  On January 22, 2001, Plaintiff entered a non-exclusive Aircraft Lease Agreement (the "Lease") with Defendants.  *See* Dkt. No. 12-4. Under the Lease, Defendants, in turn, agreed to charter the Aircraft to third parties at $5,100.00 per flight hour, remitting eighty-five (85) percent of the revenues to Plaintiff.  *See* Dkt. No. 1 at ¶¶ 18-20.

In June 2002, after obtaining Plaintiff's authorization, Defendants chartered the Aircraft to SportsFlight Air, Inc. ("SFA"), a subcontractor to the federal government.  *See id.* at ¶ 2. Under Defendants and SFA's charter contract (the "Charter Contract"), Defendants agreed to charter the Aircraft to SFA for six months.  *See id.* at ¶ 22.  In exchange, SFA agreed, among other things, to guarantee payment for at least 250 flight hours per month at a reduced rate of $4,900.00 per flight hour.  *See id.* at ¶ 24.  After the initial six-month period expired, SFA extended the Charter Contract on a monthly basis until May 2005.  *See id.* at ¶ 26.  During the life of the Charter Contract, Defendants sent monthly invoices to SFA, received payment on those invoices, and remitted eighty-five percent of the charter revenues they collected to Plaintiff.  *See id.* at ¶ 27.

---

[1] For purposes of ruling on the instant motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint.

SFA decided not to extend the Charter Contract beyond May 2005; and Defendants, without Plaintiff's knowledge, allegedly began negotiating SFA's final payment. *See id.* at ¶ 34. In October 2006, Defendants sent a final invoice to SFA for $2,469,000.00, representing the total number of hours SFA chartered the Aircraft minus the actual hours SFA used coupled with the number of hours Defendants chartered the Aircraft to other third parties. *See id.* Plaintiff, however, alleges that SFA actually owed $2,408,840.00 in charter revenues, plus contract interest of one and one-half (1.5) percent per month for each month that the amount went unpaid. *See id.* at ¶ 35. SFA did not pay the final invoice. *See id.* at ¶ 37.

In April 2007, Defendants commenced an action against SFA in New York State Supreme Court, Columbia County, to recover the outstanding charter fees ("SFA litigation"). *See id.* at ¶¶ 37-38. Plaintiff was not a named party in that matter. *See id.* at ¶ 39. Defendants allegedly mentioned the lawsuit to Plaintiff for the first time in December 2008. *See id.* at ¶ 40.

In January 2009, Plaintiff met with Defendant Mahlon W. Richards ("Defendant Richards"), the president and owner of Defendant Richmor Aviation, Inc., to discuss the status of the SFA litigation. *See id.* at ¶ 41. At that meeting, Defendant Richards allegedly advised Plaintiff that Defendants commenced the SFA litigation on Plaintiff's behalf and that they would remit any recovered charter revenues to Plaintiff per the Lease's terms. *See id.* at ¶ 42.

In February 2010, the New York Supreme Court, following a bench trial, entered a judgment in Defendants' favor in the total amount of $1,674,956.00. *See id.* at ¶ 43. In March 2011, the New York State Appellate Division, Third Department, upheld the judgment but modified the total amount to $1,567,373.00, based upon a calculation error. *See id.* at ¶ 44. In May 2011, Defendants commenced collection efforts against SFA to enforce the judgment but

allegedly did not consult with or notify Plaintiff of these efforts. *See id.* at ¶¶ 45-46. SFA failed to respond to Defendants' requests for financial disclosures. *See id.* at ¶ 45.

In September 2011, Defendant Richards notified Plaintiff that SFA had expressed interest in settling the matter and had proposed to pay $400,000 without any collateral or security. *See id.* at ¶ 47. At that time, Defendant Richards and Plaintiff agreed to reject SFA's offer. *See id.* at ¶ 48. Defendants thereafter commenced legal action to enforce the judgment from SFA, allegedly without consulting or notifying Plaintiff. *See id.* at ¶ 49. In March 2012, the New York Supreme Court, Columbia County, entered an order in Defendants' favor, directing SFA to pay the judgment or produce documents and testimony disclosing its assets. *See id.* at ¶ 50. Again, Defendants allegedly did not advise Plaintiff of the court's order. *See id.* at ¶ 51.

In July 2012, Defendants settled with SFA for a total amount of $775,000.00 ("SFA settlement"), which is allegedly one-half the total amount of the judgment and far less than the full amount supposedly owed to Plaintiff under the Lease. *See id.* at ¶¶ 52-53. Plaintiff contends that Defendants settled with SFA without obtaining its consent. *See id.* Although Defendants received a settlement check from SFA in August 2012, they neither advised Plaintiff of the SFA settlement nor remitted any of the proceeds. *See id.* at ¶¶ 54-55. Plaintiff claims that Defendant Richards contacted Plaintiff to discuss operational matters throughout Defendants' settlement negotiations with SFA and after they settled in August 2012. *See id.* at ¶ 56.

On January 11, 2013, Plaintiff notified Defendants that it would cease using their aircraft management services. *See id.* at ¶ 57. At that time, Plaintiff was allegedly unaware of the SFA settlement. *See id.* at ¶ 58. Defendant Richards thereafter telephoned Plaintiff several times to discuss the matter but never informed Plaintiff of the SFA settlement at any time during these conversations. *See id.* ¶¶ 59-60. Plaintiff alleges that it did not learn of the SFA settlement until

January 18, 2013.  *See id.* at ¶ 61.  Although Plaintiff alleges that Defendant Richards has since

conceded that Defendants owe Plaintiff a share of the recovered charter revenues per the Lease,

Defendants have never remitted any of that money.  *See id.* at ¶¶ 62-63.  On February 12, 2013,

Plaintiff demanded, to no avail, that Defendants remit its share of the SFA settlement proceeds

within seven days.  *See id.* at ¶¶ 64-65.

On March 15, 2013, Plaintiff commenced the instant action against Defendants pursuant

to 28 U.S.C. § 1332(a), alleging causes of action for breach of contract, fraud, conversion,

violation of Section 349 of New York General Business Law ("GBL § 349"), and constructive

trust.  *See* Dkt. No. 1.  Plaintiff requested a judgment against Defendants (1) awarding it

damages in an amount no less than $2,047,514.00, plus contract interest, costs, and attorney's

fees; (2) imposing a constructive trust over the charter revenues that Defendants have failed to

remit; (3) awarding treble damages up to $1,000.00; and (4) costs, disbursements, and attorney's

fees in connection with this action.  *See id.* at WHEREFORE Clause.  In response, Defendants

filed the instant motion to dismiss.


### III. DISCUSSION

**A.    Procedural bars**

As an initial matter, Defendants present three procedural grounds to dismiss the

complaint in its entirety: (1) non-joinder, (2) the doctrine of abstention, and (3) the doctrine of

*forum non conveniens*.[2]

---

[2] Defendants also argue that Plaintiff's causes of action are untimely.  The Court will
address this timeliness issue, where relevant, in the subsequent section regarding the legal
sufficiency of the causes of action.

### 1. *Non-joinder*

Rule 12(b)(7) of the Federal Rules of Civil Procedure states that a party may seek to dismiss a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19 of the Federal Rules of Civil Procedure states, in pertinent part, that

> [a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A)-(B).

In support of dismissal, Defendants argue that Plaintiff failed to join SFA, who they allege is a necessary party. *See* Dkt. No. 12-1 at 28. Defendants explain that they entered a confidentiality agreement with SFA following the SFA litigation in which they agreed "not to discuss orally or in writing any facts relating to the [state litigation] and the terms of [the settlement agreement] with any third party." *See id.* In response, Plaintiff avers that SFA's presence in this action is not necessary for the Court to adjudicate its causes of action against Defendants. *See* Dkt. No. 16 at 27.

Contrary to Defendants' argument, the Court finds that joining SFA is not necessary to determine whether Defendants breached the Lease, acted fraudulently, or converted Plaintiff's share of the recovered charter revenues unlawfully. SFA is not a necessary party because only Plaintiff and Defendants executed the Lease, which is the basis of the complaint; and only Defendants' actions, or lack thereof, toward Plaintiff prior to and following their receipt of the recovered charter revenues are in question. Plaintiff also has no basis to hold SFA liable for

6

Defendants' alleged misconduct because Defendants possessed sole authority to bill and collect the charter revenues from SFA under the Lease.  *See* Dkt. No. 12-4.  Further, the fact that SFA, which has been dissolved, may seek to enforce the confidentiality agreement in state court is alone insufficient to compel dismissal of this case.

Accordingly, the Court denies Defendants' motion to dismiss for non-joinder.

### 2.  *Doctrine of abstention*

"'The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'"  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (quotation omitted)); *see also Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (stating that "abstention is generally disfavored, and federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction" (quotation omitted)).  The Supreme Court has held that "a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources[.]"  *Niagara Mohawk*, 673 F.3d at 100 (quoting [*Colorado River*, 424 U.S.] at 817-18); *see also Wells Fargo Bank, N.A. v. Kokolis*, No. 12-cv-2433, 2013 U.S. Dist. LEXIS 31070, *14-*15 (E.D.N.Y. Mar. 1, 2013) (stating that, "[a]s a threshold matter, 'a finding that the concurrent proceedings are "parallel" is a necessary prerequisite to abstention under *Colorado River*'" (quotation and other citation omitted)).  "'Federal and state proceedings are "concurrent" or "parallel" for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same.'"

*Wells Fargo*, 2013 U.S. Dist. LEXIS 31070, at *15 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997)).

        After finding the threshold parallelism, district courts must consider the following six factors to determine whether abstention is appropriate:

> "(1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights."

*Niagara Mohawk*, 673 F.3d at 100-01 (quoting *Woodford* [*v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517,] 522 [(2d Cir. 2001)]).  "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required. . . . Only the clearest of justifications will warrant dismissal."  *Colorado River*, 424 U.S. at 818-19 (internal citation omitted)).

        Here, the SFA litigation between Defendants and SFA in New York State Supreme Court does not justify the Court's abstention from exercising jurisdiction in this case.  Plaintiff was not a party to the SFA litigation, and the SFA litigation closed nearly three years before Plaintiff commenced this action.  *See Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 117-18 (2d Cir. 1998) (stating that "[t]he principles of *Colorado River* are to be applied only in situations 'involving the contemporaneous exercise of concurrent jurisdictions'" (quotation omitted)).  In addition, the issues presented in this case, namely Defendants' alleged delinquencies under the Lease, are in stark contrast to the issues resolved in the SFA litigation, namely SFA's failure to pay for chartering the Aircraft under the Charter Contract.

Even assuming any state-court litigation parallels this case, the six aforementioned factors militate against abstention.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) (noting that courts should evaluate the six factors "with the balance heavily weighted in favor of the exercise of jurisdiction").  First, because the present action is not an *in rem* action and does not involve jurisdiction over property, the first factor cuts against abstention.  *See Vill. of Westfield v. Welch's,* 170 F.3d 116, 122 (2d Cir. 1999) (quotation omitted).  Second, because both courts are located in the Northern District of New York, the federal and state forums are equally convenient.  *See id.* (stating, "where the federal court is 'just as convenient' as the state court, that factor favors retention of the case in federal court'" (quotation omitted)).  Third, the SFA litigation closed nearly three years prior to Plaintiff bringing the instant action and resolved the issue of SFA's unpaid charter fees; therefore, contrary to Defendants' argument, no risk of piecemeal litigation exists.  *See Colorado River*, 424 U.S. at 816 (holding that the "mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction" (citations omitted)).  Fourth, even though the SFA litigation commenced five years before this matter, this factor carries no weight because the SFA litigation has been resolved for some years.  Fifth, although New York law governs Plaintiff's claims, the state law issues are not particularly novel or complex for the Court; therefore, "the absence of a federal issue weighs only slightly in favor of abstention." *Wells Fargo*, 2013 U.S. Dist. LEXIS 31070, at *21.  Finally, because there is no parallel state-court litigation, there is no issue as to whether the state court """will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'"" *Id.* (quotation omitted)).  In sum, after weighing these six factors, the Court finds no exceptional circumstances to warrant abstention.

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's case on abstention grounds.

### 3.  Doctrine of forum non conveniens

"'The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute.'" *Nuss v. Sabad*, No. 7:10-cv-279, 2011 U.S. Dist. LEXIS 157287, *54 (N.D.N.Y. Sept. 7, 2011) (quotation omitted).  The decision to dismiss a case on *forum non conveniens* grounds "lies wholly within the broad discretion of the district court . . ."  *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996) (citation omitted).  Nevertheless, the Second Circuit has adopted a three-step process to govern motions to dismiss for *forum non conveniens*.  *See Nuss*, 2011 U.S. Dist. LEXIS 157287, at *54 (quoting *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005)).

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  *See id.*  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute.  *See id.*  Finally, at step three, a court balances the private and public interests implicated in the choice of forum.  *See id.* at 73-74.

*Norex*, 416 F.3d at 153 (citing [*Iragorri v. United Techs. Corp.,* 274 F.3d 65,] 73-74 [(2d Cir. 2001)]).

Based on the aforementioned principles, Defendants have failed to persuade the Court that it should dismiss this case for *forum non conveniens*.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) (stating that any review of a *forum non conveniens* motion starts with "a strong presumption in favor of the plaintiff's choice of forum").  At the first step, the Court awards Plaintiff's choice of forum deference.  *See Nuss*, 2011 U.S. Dist. LEXIS 157287, at *55

(stating that, "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed'" (quotation omitted)).  Although Plaintiff is a Delaware corporation, Defendant Richmor is a corporation organized and existing under the laws of New York, with its principal place of business located in Hudson, New York; and Defendant Richards is a citizen and resident of New York.  *See* Dkt. No. 1 at ¶¶ 8-10.  Defendants, therefore, are indisputably amenable to suit in this District and their witnesses and evidence are conveniently located here.

At the second step, Defendants' alternative forum, presumably New York State Supreme Court, Columbia County, does not further the purpose of *forum non conveniens* but appears to amount to inappropriate forum shopping.  Notably, the Second Circuit has remarked that

> [c]ourts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons. District courts should therefore arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum. And the greater the degree to which the plaintiff has chosen a forum where the defendant's witnesses and evidence are to be found, the harder it should be for the defendant to demonstrate inconvenience.

*Iragorri v. United Techs. Corp.*, 274 F.3d 65, 75 (2d Cir. 2001).  Beyond demonstrating a preference to litigate in state court, Defendants fail to proffer persuasive arguments to support dismissal based on *forum non conveniens*.

Finally, balancing the private and public interest factors relevant to this case weighs against dismissal.  Private interest factors include, among other things, "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that

make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Public interest factors, however, include the court's administrative difficulties with heavy back log of cases; "local interest in having localized controversies decided at home"; and "having the trial of a diversity case in a forum that is at home with the state law that must govern the case . . ." *Id.* at 509. Here, with respect to the private factors, the parties are private corporations incorporated in New York and Delaware so process can be obtained for unwilling witnesses, and, at this stage, no evidence exists as to the prohibitive cost for obtaining witnesses. Regarding the public factors, the Court is more than capable of applying New York law; and this case does not unduly burden the Court.

Accordingly, the Court denies Defendants' motion to dismiss for *forum non conveniens*.

**B.     Motion to dismiss for failure to state a claim**

"A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief." *Lyman v. NYS OASAS*, No. 1:12-CV-530, 2013 U.S. Dist. LEXIS 25828, *7 (N.D.N.Y. Feb. 26, 2013) (citing *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007)). In considering a motion to dismiss, a court must accept all well-pled factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, the plaintiff need only plead "a short and plain statement of the claim[,]" *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader

is entitled to relief.'" *Twombly*, 550 U.S. at 557 (quotation omitted).  Under this standard, the

pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative

level," *id*. at 555 (citation omitted), and present "enough facts to state a claim to relief that is

plausible on its face[,]" *id.* at 570.  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).   Indeed, "[w]here a

complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the

line between possibility and plausibility of entitlement to relief.'"  *Id.* (quotation omitted).

       In this case, Defendants argue that Plaintiff's factual allegations insufficiently state claims

for relief under Rule 12(b)(6) and/or are duplicative of the breach-of-contract claim and thus

should be dismissed.  The Court will examine the legal sufficiency of Plaintiff's five causes of

action in turn.


### 1.  Breach of contract

       Defendants present five grounds to dismiss Plaintiff's breach-of-contract claim: (1)

parole evidence rule; (2) statute of frauds; (3) vagueness, indefiniteness, and lack of

consideration; (4) Rule 408 of the Federal Rules of Evidence; and (5) the expiration of the six-

year statute of limitations.  *See* Dkt. No. 12-1 at 14-19.


### a.  Parol evidence rule

       Generally, the parol evidence rule excludes "extrinsic evidence of prior or

contemporaneous oral agreements to explain the meaning of a contract that the parties have

reduced to an unambiguous integrated writing." *Gualandi v. Adams*, 385 F.3d 236, 241 (2d Cir.

2004) (citation omitted).  In contract disputes, "the party opposing the admission of parol

evidence must demonstrate that 1) the final, written, contract is an integrated agreement, 2) the language of the written contract is clear and unambiguous, and 3) there has been a breach of the contract." *Morgan Stanley High Yield Secs., Inc. v. Seven Circle Gaming Corp.*, 269 F. Supp. 2d 206, 213 (S.D.N.Y. 2003) (citations omitted).

Contrary to Defendants' argument, the parol evidence rule is inapplicable to this case because Defendant Richards articulated his oral assurances years after the parties executed the Lease, not prior to or contemporaneous with the Lease. *See Trans-Pro Logistic Inc. v. Coby Elecs. Corp.*, No. 05 CV 1759, 2012 U.S. Dist. LEXIS 19899, *26 (E.D.N.Y. Feb. 16, 2012) (stating that, "when parties have reduced their agreement to writing, 'the parol evidence rule operates to exclude evidence of all prior or contemporaneous negotiations or agreements offered to contradict or modify the terms of their writing'" (quotation omitted)). Viewing the facts in a light most favorable to Plaintiff, the Court further finds that Defendant Richards' oral assurances did not contradict or modify the Lease's terms and thus did not change the terms of the parties' bargain. At this stage, Plaintiff appears to be merely seeking to enforce the Lease's plain language regarding Defendants' remission of paid charter revenues to Plaintiff for Defendant chartering the Aircraft to SFA.

Based on the foregoing, the Court denies Defendants' motion to dismiss the breach-of-contract claim based on the parol evidence rule.

### b. *Statute of frauds*

New York's statute of frauds voids unwritten agreements that, by their terms, cannot be performed within one year of their formation. *See* N.Y. Gen. Oblig. Law § 5-701 (a)(1); *see also Guilbert v. Gardner*, 480 F.3d 140, 151 (2d Cir. 2007) (stating that "the Statute of Frauds

encompasses 'only those contracts which, by their terms, "have absolutely no possibility in fact and law of full performance within one year"'" (quotation omitted)).  In New York, "courts . . . construe this one-year provision of the statute narrowly to give effect to oral contracts which are capable of being performed within one year." *Weisse v. Engelhard Minerals & Chems. Corp*., 571 F.2d 117, 119 (2d Cir. 1978)).

In this case, assuming no writing expressly memorializes Plaintiff's right to payment for the charter revenues that Defendants recovered in the SFA settlement, the Court finds that the statute of frauds does not bar Plaintiff's breach-of-contract claim based on Defendant Richards' alleged oral assurances.  It is reasonable that Defendants were capable of remitting Plaintiff's share of any charter revenues recovered in the SFA litigation within one year of Defendant Richards' oral assurance, as Defendants could have settled the matter with SFA within that timeframe.  *See Callahan v. Coventry*, No. 027704/2010, 39 Misc. 3d 1228(A), 2013 WL 2168969 (Cnty. Ct., Suffolk Cnty., May 17, 2013) (stating that, "[a]s long as the agreement may be 'fairly and reasonably interpreted' such that it may be performed within a year, the Statute of Frauds will not act as a bar however unexpected, unlikely, or even improbable that such performance will occur during that time frame (quotation omitted)).

Accordingly, the Court denies Defendants' motion to dismiss on statute of frauds grounds.

### c.  *Vagueness, indefiniteness, and lack of consideration*

"New York law requires that the terms of an alleged contract be set forth with enough clarity to enable the court to determine, or discern with reasonable certainty, the parties' agreement." *Bice v. Robb*, No. 07 Civ. 2214, 2010 U.S. Dist. LEXIS 144362, *9-*10 (S.D.N.Y. Jan. 15, 2010).  Although New York courts do not "'appl[y] the definiteness doctrine rigidly[,]'"

they "'endeavor to hold the parties to their bargain "where it is clear from the language of the agreement that the parties intended to be bound and there exists an objective method for supplying a missing term . . . .""" *Id.* (quotation omitted).

Viewing the facts in a light most favorable to Plaintiff, the Court declines to dismiss the breach-of-contract claim because of vagueness.  As repeatedly stated, the Lease unambiguously requires Defendants to remit to Plaintiff eighty-five percent of the charter revenues they collected from third parties (*e.g.*, SFA) for chartering the Aircraft.  *See* Dkt. No. 12-4 at § 5.3.  In addition, Defendants' consideration for serving as Plaintiff's chartering agent was retaining fifteen percent of the charter revenues collected from third parties.  Similarly, it is perfectly plausible that Plaintiff authorized the lower charter rate in Defendants and SFA's Charter Contract because SFA guaranteed to pay for a minimum number of flight hours per month.  Although discovery should shed additional light on the extent of Defendant Richards' oral assurances, the Court concludes that Plaintiff, at this early stage, sufficiently alleges that the Lease's terms governing payment of charter revenues are clear and definitive.

Accordingly, the Court denies Defendants' motion to dismiss on the grounds of vagueness, indefiniteness, and lack of consideration.

### d.  *Rule 408 of the Federal Rules of Evidence*

"Rule 408 [of the Federal Rules of Evidence] generally prohibits the introduction of evidence regarding offers of compromise or settlement when the evidence is offered 'to provide liability for, invalidity of, or amount of a claim that was disputed as to validity or amount.'" *Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299, 316 (S.D.N.Y. 2011) (quoting Fed. R. Evid. 408(a)); *see also* N.Y. C.P.L.R. § 4547 (McKinney's 2007) (providing that, in the absence

16

of a written agreement, evidence of parties' settlement offers and their conduct or statements made during settlement negotiations are inadmissible).  Evidence of settlement offers, however, is admissible under Rule 408 if it is offered for another purpose.  *See* Fed. R. Evid. 408(b).

In this case, Defendants summarily argue that, because "the alleged oral statements were also allegedly made during settlement discussions[,] . . . they would be excluded under the rules of evidence."  *See* Dkt. No. 12-1 at 19.  Defendants' assertion is incorrect, as Defendant Richards made his oral assurances in January 2009, during the SFA litigation.  It is clear that Defendants did not obtain a judgment against SFA until well after 2009, and thus it is impossible to conclude that Defendant Richards' oral assurances were made during some form of negotiations over the SFA charter revenues.  *See* Dkt. No. 1 at ¶¶ 45, 47-48.  Thus, Defendants' conclusory argument is insufficient to warrant dismissal of Plaintiff's breach-of-contract claim.

In conclusion, the Court finds that Plaintiff has plausibly alleged its breach-of-contract claim and thus denies Defendants' motion to dismiss on this ground.


### e.  *Timeliness*

Generally, "'[t]he statute of limitations was enacted . . . to prevent the bringing of stale claims and to protect defendants from the fear of unexpected litigation.'"  *Hutchinson v. City of New York*, No. 07 CV 841, 2010 WL 1437926, *4 (E.D.N.Y. Feb. 8, 2010) (quotation omitted).  A statute of limitations typically begins to run when the cause of action accrues.  *See* N.Y. C.P.L.R. § 203(a) (stating that "[t]he time within which an action must be commenced . . . shall be computed from the time the cause of action accrued to the time the claim is interposed").

In New York, the statute of limitations for a breach-of-contract claim is six years.  *See* N.Y. C.P.L.R. § 213.  "A cause of action for breach of contract ordinarily accrues and the

limitations period begins to run upon breach." *Guilbert*, 480 F.3d at 149 (citation omitted).  The statute of limitations begins regardless of whether the plaintiff is aware of the breach.  *See id.* (citation omitted).  "If, however, a contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew."  *Id.* at 150 (citations omitted).

In this case, Plaintiff alleges that Defendants refuse to remit its eighty-five percent of the charter revenues they recovered in August 2012 from the SFA settlement in accordance with the Lease.  Since the Lease set no end date to Defendants' obligation to remit charter revenues they collected from third parties like SFA, Defendants' obligation constitutes a continuing performance requirement.  *See Faulkner v. Arista Records LLC*, 602 F. Supp. 2d 470, 478 (S.D.N.Y. 2009) (finding that an ongoing failure to pay in accordance with the contract's terms constituted a continuing violation).  Consequently, Plaintiff's breach-of-contract claim accrued in August 2012, not in October 2006, as Defendants argue.  Defendants cannot escape liability for failing to remit the recovered charter revenues to Plaintiff in August 2012, simply because they initially breached the Lease in October 2006.  *See Guilbert*, 480 F.3d at 150 (finding a continuing violation where defendant repeatedly failed to make annual payments because "each successive breach may begin the statute of limitations running anew").

Accordingly, because Plaintiff filed the complaint on March 15, 2013, approximately seven months after the cause of action accrued in August 2012, the Court denies Defendants' motion to dismiss the breach-of-contract claim as untimely.

### 2.  *GBL § 349*

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]"  N.Y. Gen. Bus. Law § 349(a).

18

To state an actionable violation of GBL § 349, "'a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'"  *Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 300 (E.D.N.Y. 2010) (quotation and footnote omitted)). Although GBL § 349, at its core, is a consumer protection statute, a business may assert violations of GBL § 349 but only where it demonstrates that "the defendant's deceptive conduct is, at least to some extent, directed at non-business consumers." *Id.* at 304 (footnote omitted); *see also Clayton v. Katz*, No. 10 Civ. 5755, 2012 U.S. Dist. LEXIS 137671, *16 n.12 (S.D.N.Y. Sept. 25, 2012) (defining the term consumers "as 'those who purchase goods and services for personal, family or household use'" (quotation omitted)).  "In making this determination, New York courts may consider the sophistication of the parties and the amount of the transaction at issue — in other words, whether the parties 'need the protection' of the consumer-protection law."  *Clayton*, 2012 U.S. Dist. LEXIS 137671, at *16 (citations omitted).

Applying these principles to this case, Plaintiff has not charged that Defendants' alleged deceptive behavior was consumer-oriented.  Plaintiff's bare assertion that Defendants' "deceptive business practice was aimed at members of the public generally, namely Plaintiff and Defendants' other clients, which reasonably rely on Defendants to serve as a charter agent for their aircraft" is not enough to salvage this claim.  *See* Dkt. No. 1 at ¶ 101; *see also Spirit Locker*, 696 F. Supp. 2d at 304 (dismissing a GBL § 349 claim because the plaintiff only "allege[d] conduct that [wa]s directed only at other businesses, and businesses cannot be consumers for this purpose").  The alleged deceptive conduct focuses on the private contract dispute between Plaintiff and Defendants, as only Plaintiff, not consumers in general, suffered financial harm from Defendants' alleged deceptive practices.  *See Oswego Laborers' Local 214 Pension Fund v.*

*Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995) (noting that, because GBL § 349 is a consumer protection statute, "[p]rivate contract disputes, unique to the parties, . . . [do] not fall within the ambit of the statute" (citation omitted)).  Even viewing the facts in a light most favorable to Plaintiff, the complaint is void of factual allegations demonstrating that Defendants engaged in deceptive acts that impacted anyone other than Plaintiff and Defendants, let alone had a broad impact on consumers at large.

Alternatively, Plaintiff contends that it qualifies as a "consumer" for purposes of GBL § 349, despite being a corporation, because it contracted for Defendants' aircraft management services.  This argument, however, falls short of persuading the Court that the parties are anything but two sophisticated corporations that do not need GBL § 349's protection.  *See Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 450 (S.D.N.Y. 2004) (stating that GBL § 349 aims "to protect 'the little guy' from false advertising, pyramid schemes, bait-and-switch sales tactics, and other mischievous machinations by swindlers and scallywags" (citation omitted)); *Spirit Locker*, 696 F. Supp. 2d at 301 (stating that "[t]he paradigm § 349 case 'involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods[,] usually by way of false and misleading advertising'" (quotation omitted)).  Plaintiff is concededly a business and is not a "consumer" in any reasonable interpretation of the word.  *See* Dkt. No. 1 at ¶ 8.  As Defendants correctly assert, they and Plaintiff engaged in complex business transactions and private aircraft leases with rates of $5,100 per hour.  *See Genesco Entm't v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) (finding that the GBL § 349 did not cover the negotiation renting Shea Stadium because it was a "'single shot transaction,'" and not a typical consumer transaction).

Finally, Plaintiff's counsel alluded at oral argument that *St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144 (E.D.N.Y. 2010), and *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20 (1995), supported Plaintiff's argument that GBL § 349 claims might withstand dismissal even when the parties were businesses.  The facts in those cases, however, are inapposite to those present here.  First, the district court in *St. John's* did not even address a GBL § 349 claim, let alone provide authority that Plaintiff, as a corporate entity, enjoys the benefit of GBL § 349.  *See St. John's*, 757 F. Supp. 2d at 157.

Second, the plaintiffs in *Oswego Laborers'* were two not-for-profit associations administering benefit funds on behalf of union members; and the transactions at issue were ones in which the plaintiffs were acting as, and defendant treated them as, consumers.  In finding an actionable GBL § 349 claim, the New York Court of Appeals held that the alleged deceptive conduct was consumer-oriented because

> [t]he record indicate[d] that defendant Bank dealt with plaintiffs' representative as any customer entering the bank to open a savings account, furnishing the Funds with standard documents presented to customers upon the opening of accounts. The account openings were not unique to these two parties, nor were they private in nature or a "'single shot transaction.'"

*Oswego Laborers'*, 85 N.Y.2d at 26 (quotation omitted).  Here, in stark contrast, Defendants' alleged deceptive conduct centered on Plaintiff's personal monetary recovery in the SFA litigation as the Lease required.  Such conduct was unique to the parties and private in nature.

For all these reasons, the Court grants Defendants' motion to dismiss the GBL § 349 claim.

### 3.  *Constructive trust*

Under New York law, a plaintiff must satisfy four elements to establish a constructive trust: "'(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject *res* made in reliance on that promise; and (4) unjust enrichment." *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004) (quotation and other citation omitted)). "The fourth element is the most important since 'the purpose of the constructive trust is prevention of unjust enrichment.'" *Id.* (quotation and other citations omitted)). In turn, to recover under the theory of unjust enrichment, the plaintiff must show "'(1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" *Hughes v. BCI Int'l Holdings, Inc.*, 452 F. Supp. 2d 290, 304 (S.D.N.Y. 2006) (quotation omitted)). In any event, the existence of a contract governing the subject matter of the dispute may preclude unjust enrichment claims under certain circumstances. *See BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, No. 09 Civ. 9783, 2013 U.S. Dist. LEXIS 79894, *63 (S.D.N.Y. June 4, 2013) (stating that "quasi-contractual relief, such as unjust enrichment, is not permitted when an express agreement exists that governs the dispute between the parties" (citation omitted)).

Drawing all inferences in Plaintiff's favor, the Court still finds that Plaintiff offers no support to substantiate a confidential or fiduciary relationship with Defendants. At best, Plaintiff summarily alleges that it refrained from intervening in the SFA litigation because of, among other things, Defendants' fiduciary status as its agent for billing and collecting charter revenues for the use of the Aircraft. *See* Dkt. No. 16 at 24. To the extent that Plaintiff "maintain[s] that establishment of a confidential or fiduciary relationship is not necessary and that an agency relationship . . . is sufficient[] . . .[,] Plaintiff[] cite[s] no cases where Courts imposed a constructive trust on the basis of a principal and agent relationship and in particular none dealing

with sophisticated corporate entities." *BNP Paribas*, 2013 U.S. Dist. LEXIS 79894, at *69-*70 (footnotes omitted).

Accordingly, the Court grants Defendants' motion to dismiss this claim, finding that Plaintiff has not pled the elements necessary to state an actionable constructive trust claim.

### 4. Fraud

"'To state a claim for fraudulent misrepresentation under New York law, a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" *City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 300 (N.D.N.Y. 2012) (quotation omitted).

To maintain parallel fraud and breach-of-contract claims, a plaintiff must either "(1) demonstrate[] a legal duty separate from the duty to perform under the contract; (2) point[] to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seek[] special damages that the misrepresentation caused that are unrecoverable as contract damages." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007) (citing *Bridgestone/Firestone v. Recovery Credit. Servs.*, 98 F.3d 13, 20 (2d Cir. 1996)).  In this case, Plaintiff's fraud claim meets none of these requirements.

First, Plaintiff has not demonstrated a legal duty distinct from Defendants' duty to perform under the Lease.  Plaintiff attempts to defend the legal sufficiency of its fraud claim by arguing that Defendants' act of suing SFA on Plaintiff's behalf created an agency relationship independent of the Lease; however, it offers no case law to support this proposition.  *See* Dkt. No. 16 at 17.  Further, the Lease afforded Defendants the sole authority to bill and collect charter fees from third parties for chartering Plaintiff's Aircraft; and Defendants acted in furtherance of

23

this contractual authority and obligation in suing SFA for its unpaid charter fees.  *See* Dkt. No. 12-4.  Defendants' suit to recover SFA's unpaid charter revenues, therefore, did not spring from circumstances extraneous to the Lease.  Rather, the basis of Plaintiff's fraud claim is a breach of Defendants' obligations under the Lease.

Second, Plaintiff fails to demonstrate that Defendant Richards' oral assurance was a fraudulent misrepresentation collateral to the Lease.  Defendant Richards' oral assurances "amount to little more than intentionally-false statements . . . indicating his intent to perform under the [Lease,]" which is duplicative of the underlying breach of contract claim.  *Bridgestone*, 98 F.3d at 19.  "Whatever trust and confidence [Plaintiff] placed in [Defendant Richards] had solely to do with his carrying out his obligations under the [Lease]," *id.* at 20, and thus is insufficient to allow parallel fraud and breach of contract claims to stand.

Third and finally, Plaintiff generally requests no less than $775,000.00 (together with interest, costs, and attorney's fees) in damages for Defendants' alleged fraudulent conduct.  *See* Dkt. No. 1 at ¶ 86.  These damages reflect the precise amount of charter revenues that Defendants recouped in the SFA settlement and, therefore, they are a subset of those damages Plaintiff seeks to recover for Defendants' alleged breach of contract.  *See id.*  Plaintiff, therefore, does not pursue special damages that are unrecoverable as contract damages.  In addition, Plaintiff has not specified, as required, itemized special damages it has sustained.  *See* Fed. R. Civ. P. 9(g) (requiring that, "[i]f an item of special damage is claimed, it must be specifically stated"); *see also Evans v. Excellus Health Plan, Inc.*, No. 6:11-CV-1248, 2012 U.S. Dist. LEXIS 109849, *24-*25 (N.D.N.Y. Aug. 6, 2012) (stating, "[a]ny pleading of special damages must be sufficiently specific to 'identify actual losses and be related causally to the alleged

tortious acts. . . .' Merely alleging 'lost future income, conjectural in identity and speculative in amount" is insufficient.'" (quotations and other citation omitted)).

In sum, Plaintiff does not plausibly allege a cause of action sounding in fraud that is sufficiently distinct from its breach-of-contract claim.  *See First Bank of Americas v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 291 (1st Dep't 1999) (noting, "[a] fraud claim should be dismissed as redundant when it merely restates a breach of contract claim, i.e., when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract" (citation omitted)).  Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's fraud claim on the ground that it is duplicative of Plaintiff's breach-of-contract claim.


### 5.  Conversion

"Under New York law, to plead a claim of conversion, a plaintiff must establish that '(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'"  *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 164 (E.D.N.Y. 2012) (quotation omitted)).  "However, even if a plaintiff meets all of the elements of a conversion claim, the claim will still be dismissed if it is duplicative of a breach of contract claim."  *Ad Rendon Communs., Inc. v. Lumina Ams., Inc.*, No. 04-CV-8832, 2007 U.S. Dist. LEXIS 75625, *12-*13 (S.D.N.Y. Oct. 9, 2007) (citations and footnote omitted).  Thus, "[a] conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations."  *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006) (footnote omitted); *see also LaRoss*, 874 F. Supp. 2d at 164 (stating that "a

conversion claim may only proceed if there are allegations of violations and damages distinct from those predicated on a breach of contract" (citations omitted)).  "'In determining whether a conversion claim is duplicative of a breach of contract claim, courts look both to the material facts upon which each claim is based and to the alleged injuries for which damages are sought.'" *LaRoss*, 874 F. Supp. 2d at 164 (quotation omitted).

In this case, Plaintiff's conversion claim is entirely duplicative of its breach-of-contract claim because Plaintiff has unequivocally premised its conversion claim on the same factual allegations underlying its breach-of-contract claim.  *See LaRoss*, 874 F. Supp. 2d at 164-65 (dismissing the plaintiff's conversion claim as duplicative where the same facts were alleged in both the breach-of-contract and conversion claims).  Particularly, Plaintiff's breach-of-contract claim alleges that Defendants breached the Lease by, among other things, "failing and refusing to remit" to Plaintiff its eighty-five percent of the charter revenues Defendants recovered in the SFA settlement, "as required under the Lease."  *See* Dkt. No. 1 at ¶ 74.  In the same vein, the conversion claim alleges, "Defendants failed and refused to respond to Plaintiff's demand for return of the charter revenues lawfully owed to [it]."  *See id.* at ¶¶ 94-95.

In reaching the above conclusion, the Court does not turn a blind eye to Rule 8(d)(2) of the Federal Rules of Civil Procedure, which "permit[s a p]laintiff to assert claims in the alternative."  *St. John's*, 757 F. Supp. 2d at 183 (stating that, "[a]t the pleading stage, [the p]laintiff is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims"); *see also* Fed. R. Civ. P. 8(d)(2) (stating that "[a] party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").  Relying upon Rule 8, Plaintiff argues that it "may plead [the

conversion claim] in the alternative should this Court determine that the Lease does not govern payment of the SFA charter revenues for use of Plaintiff's aircraft."  *See* Dkt. No. 16 at 17. Plaintiff's argument is untenable because, in its conversion cause of action, it identifies the Lease as the sole source of its "entitle[ment] to 85% of the charter rate."  *See* Dkt. No. 1 at ¶ 88; *see also Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 124 (S.D.N.Y. 1996) (dismissing the plaintiff's conversion claim because, "[i]n identifying the dealer agreement as the source of its allegedly superior right of possession, plaintiff tacitly admits that it is seeking to enforce a contract right, not a right tied to some independent duty under state law").  Thus, the Court rejects Plaintiff's attempt to frame its conversion claim as an alternative pleading in order to recover damages due to Defendants purportedly breaching the Lease.  *See Alliance Grp. Servs., Inc. v. Grassi & Co.*, 406 F. Supp. 2d 157, 170 (D. Conn. 2005) (stating that, "[w]here 'plaintiffs have merely repeated . . . their breach of contract claims and called them conversions,' the conversion claims must fail" (quotation omitted)).

What is more, in opposition to Defendants' motion to dismiss, Plaintiff summarily contends that the conversion "claim[] should survive on the additional ground that [it] has alleged an independent basis for special damages—Defendants' knowing and deliberate interference with Plaintiff's clear right to receive 85% of the charter revenues recovered from SFA for the use of Plaintiff's [A]ircraft."  *See* Dkt. No. 16 at 17.  However, the damages Plaintiff seeks because of Defendants allegedly converting charter revenues lawfully owed to it (*i.e.*, $775,000.00 together with interest, costs, and attorney's fees) are redundant of the breach-of-contract damages it has requested.  *See* Dkt. No. 1 at ¶¶ 75, 96; *see also Rolls-Royce*, 929 F. Supp. at 124 (stating, "[c]laims for conversion similarly will be deemed redundant when 'damages are merely being sought for breach of contract'" (quotation omitted)).  There are,

27

therefore, no "special damages" as courts interpret that term.  *See e.g.*, *Charles Atlas, Ltd. v. Time-Life Books, Inc.*, 570 F. Supp. 150, 155 (S.D.N.Y. 1983) (stating, ("[s]pecial damage is the pecuniary loss resulting directly from the effect of a defendant's allegedly wrongful conduct. . . . Included among the losses deemed to constitute special damages are the expenses necessary to counteract the alleged wrongful conduct . . . "(citations omitted)); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 75 F. Supp. 2d 235, 239 (S.D.N.Y. 1999) (stating, "New York courts define special damages 'as the loss of something having economic or pecuniary value'" (quotation and other citation omitted)); *Kirby v. Wildenstein,* 784 F. Supp. 1112, 1116 (S.D.N.Y. 1992) (stating, "[s]pecial damages must be the 'natural and immediate consequence of the disparaging statements' to be recoverable" (quoting *Angio-Med*[. *Corp. v. Eli Lilly & Co.*]*, 720 F. Supp. [269,] 274 [(S.D.N.Y. 1989)]) (citing *Cambridge Assoc. v. Inland Vale Farm Co.*, 116 A.D.2d 684, 497 N.Y.S.2d 751, 753 (2d Dept. 1986) (special damages must be "related causally to the alleged tortious acts")).

Accordingly, the Court finds that Plaintiff's conversion claim is duplicitous of the breach-of-contract claim and thus grants Defendants' motion to dismiss on this ground.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and oral arguments and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **GRANTED** with respect to Plaintiff's second, third, fourth, and fifth causes of action for fraud, conversion, violations of GBL § 349, and constructive trust; and the Court further

**ORDERS** that Defendants' motion to dismiss is **DENIED** in all other respects; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Treece for all further pretrial matters.

**IT IS SO ORDERED.**


Dated: September 3, 2013
         Syracuse, New York


Frederick J. Scullin, Jr.
Senior United States District Court Judge