UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ASSEMBLY POINT AVIATION, INC.,

         **Plaintiff,**

    v.                1:13-CV-298
                         (FJS/DJS)

RICHMOR AVIATION, INC.,

          **Defendant.**
_____

**APPEARANCES**            **OF COUNSEL**

**WHITEMAN OSTERMAN &**     **JOHN J. HENRY, ESQ.**
**HANNA LLP**           **ROBERT S. ROSBOROUGH, IV, ESQ.**
One Commerce Plaza
Suite 1900
Albany, New York 12260
Attorneys for Plaintiff

**TABNER, RYAN & KENIRY, LLP**   **WILLIAM RYAN, JR., ESQ.**
18 Corporate Woods Boulevard    **BRIAN M. QUINN, ESQ.**
Albany, New York 12211-2605
Attorneys for Defendant

**SCULLIN, Senior Judge**

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

  Pending before the Court is Plaintiff's motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure or, in the alternative, for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. *See* Dkt. No. 102.

## II. BACKGROUND

Plaintiff owns a Gulfstream IV aircraft ("Aircraft"). Defendant maintains, services, provides crews for, and brokers charter flights on third parties' aircraft. In January of 2001, Plaintiff and Defendant entered into a lease agreement whereby Defendant would procure charter flights on the Aircraft in exchange for a 15% commission of the resulting charter revenue. Specifically, the lease provided that Defendant would "remit 85% of the charter rate per hour flown" to Plaintiff. The Lease incorporated by reference the parties' Management Agreement. The Management Agreement defines the term "Flight Hour" to mean "the time of take-off to landing (i.e., wheels up to wheels-down), as recorded time on the Aircraft hour meter, or, if nonfunctional for any reason, as indicated in the journey log entries."

The parties do not dispute that they intended the Lease to limit Plaintiff's payment to hours that the Aircraft was actually in the air during a charter flight. Nor do the parties dispute that Plaintiff received payment for all hours that the Aircraft actually flew. Rather, the critical issue in this case is whether the parties orally modified the Lease to provide that Defendant would remit to Plaintiff payment for unused flight hours accrued through a contract Defendant entered into with Sportsflight Air., Inc. ("SFA").

In early 2002, Defendant explained that he had arranged an opportunity whereby Plaintiff's aircraft could be leased to the United States government for a high volume of charter flights. Defendant's prospective client was SFA, a subcontractor that would in turn charter the Aircraft to the government. Defendant reported to Plaintiff that SFA agreed to guarantee 250 hours during the first six months. SFA thereafter had the option to renew month-to-month for a

minimum of fifty flight hours per month. The SFA contract, while identifying the Aircraft by its registration number, does not mention Plaintiff.

Plaintiff asserts that it agreed to forego certain of its rights under the Lease because Defendant represented that chartering the Aircraft to SFA would entitle Plaintiff to revenue for a guaranteed minimum number of flight hours per month even if the Aircraft did not fly those hours. According to Plaintiff, the parties made the following oral agreement in connection with the SFA contract: first, Plaintiff and Defendant agreed that Plaintiff would subordinate its access priority to the Aircraft for the duration of the SFA contract; second, they agreed that SFA would receive a discounted charter rate of $4,900 per hour, as opposed to the Lease's stated rate of $5,100.

For several years Defendant chartered airplanes for SFA and was paid for the actual flight time, but not for the difference between the actual time and the minimum monthly amount. During this time, Defendant paid Plaintiff 85% of the revenue for the hours SFA chartered the Aircraft; however, the invoices reflecting these payments did not mention the unused flight hours.

Defendant subsequently sent SFA an invoice in the fall of 2006 for unused flight time for which SFA had guaranteed payment as part of its 50-hour monthly minimum. Defendant gave SFA a discount of some 305 hours to account for flights that the Aircraft was chartered to third parties and accordingly not available for SFA's use. When SFA failed to pay Defendant's 2006 invoice, Defendant sued SFA in Supreme Court, Columbia County, to recover the value of the unused flight hours. After prevailing in a bench trial, then-Plaintiff Richmor obtained a judgment that was adjusted to $874,650; the parties subsequently settled for $775,000. *See Richmor Aviation, Inc. v. Sportsflight Air, Inc.*, 82 A.D.3d 1423, 1426-27 (3d Dep't 2011).

After Defendant settled the state-court litigation with SFA, Plaintiff demanded that Defendant pay it the entire settlement because the settlement represented less than 85% of the total value of the unused flight time. Mr. Richards, Defendant's President, testified that he considered gifting a portion of the state-court settlement to Plaintiff; however Plaintiff never received any proceeds from the state-court settlement.

Plaintiff then commenced this action seeking, among other things, payment of at least "$2,047,514, together with contract interest, costs[,] and attorneys' fees." *See* Dkt. No. 1, Complaint, at ¶¶ 66-75. According to Plaintiff, this amount represented the total value of unused flight time accrued under the SFA contract. After the Court's partial grant of Defendant's motion to dismiss, *see* Dkt. No. 24, Plaintiff's single remaining cause of action was for breach of contract.

The parties then cross-moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 55, 58. The Court denied both parties' motions after finding that there were genuine factual disputes as to whether the parties orally modified the original lease and whether the account stated defense applied.

Thereafter, a jury trial commenced, at the end of which, the jury found as follows: (1) the parties orally modified their contract to provide that Defendant remit 85% of the SFA contract's proceeds, including all money related to unused flight hours, to Plaintiff; and (2) Defendant's account stated defense applied. As a result of the jury's findings, the Court entered judgment in Defendant's favor. Plaintiff then timely filed the pending motion for judgment as a matter of law or, in the alternative, for a new trial.

# III. DISCUSSION

**A.     Motion for a new trial**

*1. Standard of review*

A court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]"  Fed. R. Civ. P. 59(a)(1)(A).  The grounds that may justify a new trial include, among others, a verdict that is against the weight of the evidence, *see Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012), and non-harmless errors in jury instructions, *see United States v. Kozeny*, 667 F.3d 122, 130 (2d Cir. 2011), or verdict sheets, *see Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*, 425 F.3d 126, 136 (2d Cir. 2005).

"'[A] decision is against the weight of the evidence . . . if and only if the verdict is [(1)] seriously erroneous or [(2)] a miscarriage of justice.'"  *Raedle*, 670 F.3d at 417-18 (quoting *Farrior*, 277 F.3d at 635) (other citation omitted).  Furthermore, "a motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict."  *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998) (citations omitted).  "Also . . . a trial judge considering a motion for a new trial 'is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner.'"  *Id*. (quoting *Bevevino*, 574 F.2d at 684).

*2. Account stated jury instruction*

Plaintiff's motion for a new trial focuses on Defendant's account stated defense and whether and how it applies to this case.  In short, Plaintiff argues that the jury's verdict is inherently contradictory, thus seriously erroneous, because it found that the parties modified their contract while at the same time finding that the account stated defense applied.  As a first step in

its analysis, the Court must consider the applicable legal principles that govern an account stated defense.

### a. *Account stated*

"'An account stated is an agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due.'" *Seacon Corp. v. Cellect, LLC*, No. 6:06-CV-1022, 2009 WL 2495949, *4 (N.D.N.Y. Aug. 12, 2009) (quotation omitted). "An agreement as to the amount due is *implied* where an invoice is received and kept without objection made within a reasonable time." *Id.* (emphasis added). However, a claim or defense based on account stated "fails where there *has not been an account rendered*, or where there is a dispute as to whether the account is accurate." *Id.*; *see also Seneca Pipe & Paving Co., Inc. v. South Seneca Cent. Sch. Dist.*, 83 A.D.3d 1540, 1542 (4th Dep't 2011) (finding that a plaintiff failed to prove an account stated claim where the defendant "asked for a break-down" of what was due and refused to pay part of an invoice). "The failure to object raises a presumption of correctness which may be rebutted by proof of any circumstances tending to a contrary inference[.]" *James Talcott, Inc. v. U.S. Tel. Co.*, 52 A.D.2d 197, 200 (1st Dep't 1976) (citation omitted).

Importantly for the present purposes, "an account stated cannot be made an instrument to create liability when none otherwise exists[.]" *Martin H. Bauman Assocs., Inc. v. H & M Int'l Transport, Inc.*, 171 A.D.2d 479, 485 (1st Dep't 1991). Rather, an account stated "assumes the existence of some indebtedness between the parties or an express agreement to treat the statement in question as an account stated[.]" *Id*. (citation omitted). In that regard, "'[a]n account stated is an agreement, *independent of the underlying agreement*, regarding the amount due on past transactions.'" *Duane Reade v. Cardinal Health, Inc.*, 21 A.D.3d 269, 269-70 (1st

Dep't 2005) (quotation omitted). Moreover, "a claim for an account stated may not be utilized simply as another means to attempt to collect under a disputed contract." *Bauman Assocs.*, 171 A.D.2d at 485. If a party "can prove an enforceable contract, then it will be able to recover under [that] cause of action," and the account stated defense will not apply. *Id.*

With these standards in mind, an important principle appears. An account stated must be in reference to an *underlying contract*. In other words, the account stated doctrine may set the terms of an underlying contract but it cannot create or void a contract on its own. This principle was on display in *Media Tenor Int'l AG v. Medco Health Solutions, Inc.*, No. 13 Civ. 7223, 2014 WL 2933215 (S.D.N.Y. June 27, 2014), a case on which Plaintiff relies heavily. In *Media Tenor*, the parties entered into an agreement to "engage in a set of transactions *and* [their agreement] set[] the amount due for those transactions." *Id.* at *8. After the agreement was terminated, the plaintiff sought to recover for an account stated based on invoices that it had sent to the defendant pursuant to the agreement and that the defendant had retained without objection. These invoices covered the months of August, September, and October 2010. The defendant, however, had cancelled its contract with the plaintiff in early September pursuant to a clause that allowed cancellation upon providing 30 days' notice. There was, however, a remaining issue with respect to whether the cancellation was proper. In that regard, in granting summary judgment to the defendant on the plaintiff's account stated claim, the court reasoned that, "[i]f [the plaintiff] were to lose its contract claims at trial [(i.e., the proper cancellation claims)], it would not be entitled to the amount due under its invoices." *Id.* (citation omitted). In other words, if the defendant properly cancelled the contract, the un-objected to invoice was a legal nullity because it had been received after the contract had been cancelled. The Court explained, "[the plaintiff] argues that the existence of the underlying agreement does not bar, and is in fact

- 7 -

necessary for, an account stated claim. This is true. But the underlying agreement *here also defines the amount due*. Because it does, the account stated claims must be dismissed." *Id*. (emphasis added). In essence, the court concluded that a party could not rely on an account stated claim when there was an underlying contract that clearly set forth the parties' obligations. Therefore, the *Media Tenor* court held that the plaintiff could not use the mere act of sending an invoice to void the terms of the parties' underlying agreement. *See id*.

### *b. Jury instruction*

Plaintiff argues that the Court should order a new trial because its jury instructions improperly included an instruction regarding the account stated defense. "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994) (citations omitted). An erroneous instruction requires a new trial unless the error is harmless. *See id*. (citation omitted). An error is harmless only if the court is convinced that the error did not influence the jury's verdict. However, "[a] new trial is warranted if, taken as a whole, the jury instructions gave a misleading impression or inadequate understanding of the law." *Plagianos v. Am. Airlines, Inc.*, 912 F.2d 57, 59 (2d Cir. 1990) (citation omitted).

> In its charge to the jury, the Court explained the doctrine of account stated as follows:
>
> Finally, Defendant has raised the defense of "account stated" to Plaintiff's breach-of-contract claim. Under this defense, a party may waive its right to sue for breach of contract where the party receives an invoice and does not object to its accuracy or completeness within a reasonable time. This means that when an account which has been rendered remains unquestioned for more than a reasonable time after its receipt, such is evidence that the account stated has been accepted as correct. However, an account stated defense fails if you were to find that the account rendered was not intended by the parties to cover the revenues from hours guaranteed by the contract between Defendant and SFA.

*See* Dkt. No. 98 at 10.

In the first instance, the Court finds that its use of the phrase "waive its rights" might have misled or confused the jury. An account stated claim is not about a party waiving its rights, rather it "'is an agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due.'" *Seacon Corp.*, 2009 WL 2495949, at *4 (quotation omitted). In other words, a party's silence implies the correctness of a received account, *see id.*; but it does not void a liability that was otherwise due, *see, e.g., Media Tenor*, 2014 WL 2933215, at *8; *see also* Restatement (Second) of Contracts § 282 cmnt. c (1981) (stating that an account stated "operates as an admission of its contents for evidentiary purposes").

Moreover, in hindsight, the Court finds that its jury instruction may have been too vague. For example, it stated that "an account stated defense fails if you were to find that the account rendered was not intended by the parties to cover the revenues from hours guaranteed by the contract between Defendant and SFA." *See* Dkt. No. 98 at 10. Moreover, this lack of specificity in the jury instruction was compounded in the jury verdict form. In that regard, the jury's verdict begs the question of whether the jury understood how the doctrine of account stated applied. The jury, in response to the question,

> Did Plaintiff prove by a preponderance of the evidence that Plaintiff and Defendant modified the original written Lease such that Defendant was to pay 85 percent of the revenues that were due to Defendant under its contract with SFA regardless of whether the aircraft actually flew?

responded, "Yes." *See* Dkt. No. 99 at 1. That should have ended the matter. However, the verdict form directed the jury to proceed to Question 2, which asked, "Does Defendant's account-stated defense apply?", to which the jury again responded, "Yes." *See id*. at 2.

Unfortunately, the jury's verdict in this case leads to the untenable conclusion that a *blank* invoice, at least with regard to the terms of the oral modification, accepted for a long period of time effectively canceled an otherwise operative contract, the oral modification. However, neither party produced any evidence that substantiated the jury's finding that the invoices represented the accounts stated under the oral modification.[1] *See Seacon Corp.*, 2009 WL 2495949, at *4 (stating that a claim or defense based upon account stated "fails where there *has not been an account rendered*" (emphasis added)). For example, Defendant's owner stated that SFA had not paid him for the unused flight hours, and it was only after Defendant settled with SFA in state court that it was ever paid for these hours. *See* Trial Trans. at 294 (stating that the monthly invoices listed only "the hours that were flown, the expenses that we paid during that month, and the revenue that we would have generated during that month"); *see also id.* at 78 (when asked if the minimum hours would be included on the invoice, Mr. Gilmour responded, "No").

That being said, the account stated defense did have a place in this trial. In that regard, the doctrine of account stated may be used "by a defendant seeking to prevent the reopening of a paid account[.]" *In re Rockefeller Ctr. Properties*, 241 B.R. 804, 819 (Bankr. S.D.N.Y. 1999). Defendant could properly use the doctrine as evidence that the invoices were accurate reflections of the parties' agreement and that, therefore, there was no oral modification of the lease. In other words, in this case, the account stated defense could have applied to confirm the contents of the parties' *original* agreement, thereby negating the inference that the parties had orally modified their contract. However, the defense could not be used to defeat an agreement that was already

---

[1] Indeed, Defendant's position was that "there was no oral modification." *See* Trial Trans. at 335 (Defendant's summation).

binding.[2] *See Media Tenor*, 2014 WL 2933215, at *8. Thus, the Court concludes that, in both its jury instructions and the verdict form, the Court should have explained more clearly that the jury could find either that the parties orally modified their lease *or* that the account stated represented the only obligations between the parties. By permitting the jury to answer both questions in the affirmative, the verdict form allowed for the possibility of an internally inconsistent verdict, which is exactly what occurred here.

Based on the foregoing, the Court concludes that "the jury instructions gave a misleading impression or inadequate understanding of the law." *Plagianos*, 912 F.2d at 59 (citation omitted). Accordingly, the Court grants Plaintiff's motion for a new trial.

**B.**     **Motion for judgment as a matter of law**

Plaintiff alternatively moves for judgment as a matter of law. However, because a review of the record clearly shows that both parties offered sufficient evidence at trial such that a reasonable jury could have ruled in either party's favor, the Court denies Plaintiff's motion for judgment as a matter of law.

### IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure, *see* Dkt. No. 102, is **DENIED**; and the Court further

---

[2] The jury's verdict appears to be more akin to a finding that Plaintiff's claim was barred because a significant amount of time had elapsed between when the SFA contract began and when Plaintiff first asserted its rights to recover.

**ORDERS** that Plaintiff's motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure is **GRANTED**; and the Court further

**ORDERS** that the judgment in this case, *see* Dkt. No. 100, is **VACATED**; and the Court further

**ORDERS** that counsel shall participate in a telephone conference with the Court on **June 19, 2017**, at **11:00 a.m.** to schedule a date for a new trial in this matter. The Court will provide counsel with the telephone number for the conference prior to the scheduled date.

**IT IS SO ORDERED.**

Dated: May 19, 2017
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge